Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2212 | **DATE** | 12/7/01 |
| **CASE TITLE** | Bell Enterprises Venture, et al. v. Santanna Natural Gas Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion of Defendants T. Wayne Gatlin and Jesse D. Smith to Dismiss Complaint (doc. #12);
Motion of Defendant Santanna Natural Gas Corporation to Dismiss Complaint (doc. #16)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, the Court **DENIES** the motion to dismiss of Santanna Natural Gas Corporation (doc. #16), and **GRANTS** in part and **DENIES** in part the motion to dismiss of individual defendants Gatlin and Smith (doc. #12). Count II of the Complaint stands as to Gatlin & Smith; however, Count V is **dismissed** without prejudice. Plaintiffs are granted until January 4, 2002, to tender a proposed amended complaint reformulating Count V, along with a motion for leave to file. Individual defendants Gatlin and Smith may respond to Plaintiffs' motion, if any, by January 18, 2002. Briefing of the motion for partial summary judgment of defendants Gatlin and Smith (doc. #6) shall be held in abeyance. The parties are to appear before the Court for status on January 28, 2002 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 12 20 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 69 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BELL ENTERPRISES VENTURE )
and HTP AMERICA, INC., )
    Plaintiffs, )
)
    v. ) CASE NO. 01 C 2212
)
) JUDGE WILLIAM J. HIBBLER
)
SANTANNA NATURAL GAS CORP., )
T. WAYNE GATLIN, and JESSE D. )
SMITH, )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed this five-count class action against Defendants Santanna Natural Gas Corporation ("Santanna"), and its officers, T. Wayne Gatlin and Jesse D. Smith ("Individual defendants"), arising out of Santanna's refusal to honor its contracts to supply natural gas to Plaintiffs at a particular fixed rate. Defendants move to dismiss all counts of Plaintiffs' Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, Santanna's motion to dismiss (doc. #16) is **denied**, and the Individual defendants' motion to dismiss (doc. #12) is **denied** in part and **granted** in part.

### STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Tibor Machine Products, Inc. v. Freudenberg-Nok Gen. P'ship*, 967 F. Supp. 1006, 1011 (N.D. Ill. 1997). In deciding a motion to dismiss, the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). All well-pleaded facts and allegations are taken as true, and plaintiff is entitled to every reasonable inference that can be drawn from the complaint. *Id.* Indeed, dismissal is not warranted "unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.'" *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) citing *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *see also Conley v. Gibson*, 355

69

U.S. 41, 45-46 (1957). In addition, although the Court's review is limited to the allegations contained in the pleadings themselves, it will also look at documents incorporated by reference or attached to the pleadings as exhibits as they are considered part of the pleadings for all intents and purposes. *See* Fed. R. Civ. P. 10(c).

Moreover, a complaint is not required to allege all, or any of the facts entailed by the claim, *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (citation omitted), except where Plaintiff alleges fraud. In that situation, the underlying circumstances must be plead with particularity. Fed. R. Civ. P. 9(b); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). With those principles in mind, the Court turns to Plaintiffs' Complaint and the allegations contained therein.

## BACKGROUND

Plaintiffs are two commercial natural gas users in Illinois who opted to purchase natural gas from Defendant Santanna, an independent third-party supplier, rather than their local gas distribution utility ("LDC"). Consumers generally have little say concerning who will fulfill their natural gas needs, since LDCs own the pipeline and infrastructure through which natural gas is transported. However, commercial customers like Plaintiffs can choose to participate in a transportation gas program, whereby they purchase natural gas not from their LDCs, but from an independent third-party supplier, who in turn delivers the gas to the LDC to deliver to the customer's location. Participants in the transportation gas program pay the LDCs for delivering their gas, and the independent supplier for the gas supplied.

Santanna, a Texas corporation with a local sales office in Illinois, marketed itself to consumers as an experienced natural gas provider offering premium service and competitive prices. (Compl. Exh. D at pp. 2-5). Santanna's local sales office sent solicitations to each Plaintiff, via facsimile, representing that, among other things, commercial users who switched to Santanna could save anywhere from 15% to 20% annually on their natural gas costs, and that Santanna would provide a flat/fixed price for the entire term of the agreement. (Compl. Exs. I,K). Plaintiff Bell Enterprises Venture ("Bell"), operator of a multi-unit apartment complex, received a solicitation on January 21, 1999, and subsequently, on February 8, 1999, entered into a Natural Gas Agreement ("Agreement") to

-2-

purchase gas from Santanna at a fixed rate of $.285 per therm[1] for three years.[2] (Compl. Ex. A). Likewise, Plaintiff HTP America, Inc., a company that builds and sells welders and other related items, received a solicitation on January 11, 2000, and signed an Agreement with Santanna on March 7, 2000, to purchase gas at a fixed rate of $.295 per therm for three years. (Compl. Ex. B). The Agreements contained a provision authorizing Santanna to act as Plaintiffs' "exclusive agent for all matters related to services under [Plaintiffs'] utility transportation program." Also, the Agreements provided that Plaintiffs could cancel Santanna's services upon 30 days notice, but Santanna could terminate the Agreements for non-payment only. (Id.).

Nevertheless, beginning in May or June 2000, Santanna mailed letters to its customers, including Plaintiffs, informing them that "[d]ue to the recent unanticipated increase in the price of natural gas, [Santanna] has determined that a condition of Force Majeure exists, and it is no longer able to supply gas at the current contract rate." (Compl. Exs. G,H). Therefore, Santanna explained, it was adjusting their rates to one "more consistent with the current market rates." (Id.). Upon receiving this letter, Bell called Santanna's sales office to complain about the unilateral rate increase, and wrote letters to Santanna's corporate office in Texas, but to no avail. Consequently, in July 2000, Bell recalculated its bill reflecting the new combined rate of $.5019 per therm, and made payment based upon the contractual rate of $.285 per therm for natural gas. In August 2000, however, Bell received a letter from its LDC stating that Bell's contract with Santanna had been terminated; thus, the LDC would resume supplying Bell's gas service. After numerous inquiries to the LDC and Santanna, Bell was told Santanna erred in terminating its contract and that Bell could reinstate the Agreement, but at a higher fixed rate. Bell has continued to obtain its natural gas from Santanna, but has refused to pay the increased rate. HTP also protested Santanna's rate increase to no avail, so to avoid having its gas

---

[1] A therm is the unit used to measure the quantity of natural gas.

[2] On March 20, 2000, Bell signed an Addendum which set a flat rate to cover both the natural gas and delivery charges. It does not appear, however, that the Addendum changed the fixed rate for natural gas set forth in Bell's original Agreement. The Addendum also extended the term of the original Agreement for 36 months, and provided that the contract would automatically renew every three years at a rate to be determined by Santanna at the end of each term.

supply terminated, HTP has simply paid the invoiced amount each month.

Plaintiffs filed this class action lawsuit alleging that Santanna misrepresented its intentions to honor the fixed rate contracts in order to induce customers to switch to Santanna, and then wrongfully imposed higher rates once natural gas prices rose. Plaintiffs allege Individual defendants Gatlin and Smith, who at the time of the events in question served as officers and directors of Santanna,[3] drafted and/or approved Santanna's promotional materials containing these misrepresentations, and therefore were responsible for distributing false and misleading information to commercial natural gas users. The Complaint alleges breach of contract by Santanna (Count I), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2 et seq. by all Defendants (Count II), violation of the Texas Deceptive Trade Practices Act by all defendants (Count III), breach of fiduciary duty by Santanna (Count IV), and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. by the Individual defendants (Count V).[4]

## ANALYSIS

### Count I - Breach of Contract by Santanna

Plaintiffs allege they entered into fixed rate contracts with Santanna (Compl. ¶¶ 37,45), and paid Santanna for the natural gas supplied (Compl. ¶¶ 40,43,48); but prior to the expiration of the contract term, Santanna refused to supply gas at the contracted-for rate (Compl. ¶¶ 39,47), thereby damaging Plaintiffs (Compl. ¶¶ 44,49). Santanna contends those allegations are insufficient to plead a breach a contract claim. The Court disagrees.

To state a claim for breach of contract under Illinois law,[5] Plaintiffs must allege (1) the existence of a valid and enforceable contract; (2) their own performance under the terms of the contract; (3) a breach of the contract by the defendant; and (4) an injury suffered as a result of the

---

[3]Gatlin was the President, CEO, chairman of the Board of Directors and controlling shareholder of Santanna; Smith was the Executive Vice President and a director of Santanna.

[4]Plaintiffs voluntarily dismissed Count III of their Complaint on June 7, 2001. Therefore, Counts I, II, IV and V only are at issue here.

[5]The parties agree that Illinois law governs this dispute.

-4-

defendant's breach. *Petri v. Gatlin*, 997 F. Supp. 956, 964 (N.D. Ill. 1997). Relying on *Jespersen v. Minnesota Mining and Mfg. Co.*, 700 N.E.2d 1014 (Ill. 1998), Santanna first argues that Plaintiffs cannot point to a valid contract, as the Agreements here were terminable at will, executory contracts, and thus its rate modification was legitimate. *Jespersen*, however, is readily distinguishable. In that case, the Illinois Supreme Court had before it a contract with no definite duration, "which [Illinois] courts ha[d] always construed to mean terminable at will." *Id.* at 1017. In contrast, the Agreements here clearly specify a term of three years.

Santanna nonetheless maintains that *Jespersen* bars Plaintiffs' breach of contract claim because the three year duration was "illusory," as evidenced by the fact that either party had the right to terminate the Agreement at any time during the contract period. Nowhere in *Jespersen*, though, does the Illinois Supreme Court suggest that a contract of *definite duration*, which also grants the parties an unfettered right to terminate, is terminable at will. Indeed, the *Jespersen* court examined the termination provisions of the contract at issue solely to determine if the parties indicated an intent, notwithstanding the indefinite duration, to create a contract terminable for cause. *See id.* (holding that "where the parties have drafted a contract that is otherwise indefinite in duration and terminable at will, the delineation of instances of material breach in the context of a permissive and nonexclusive termination provision will not alone create a contract terminable for cause"). *Jespersen*, therefore, does not even address, let alone support, Santanna's theory that a contract of definite duration can be transformed into one lasting indefinitely simply because the parties agreed that either could terminate the contract upon notice.[6]

Santanna's additional objections to Plaintiffs' breach of contract claim, i.e., that they failed to identify how they performed their obligations under these contracts, or set forth a specific damages claim, are equally unavailing. The federal rules require notice pleading, not fact pleading, *see Albiero*, 122 F.3d at 419, which means that all Plaintiffs must do to survive a motion to dismiss is plead the bare essentials of performance and damages. *See Tibor*, 967 F. Supp. at 1011 ("at the pleading stage,

---

[6]Nor does *Jespersen* apply to the situation arising with Bell's Addendum, which contains an initial three year term with an automatic renewal provision.

[plaintiff] need only allege-rather than prove-the existence of a valid contract"); *Stanford v. Kraft Foods, Inc.*, 88 F. Supp. 2d 854, 855 (N.D. Ill. 1999). The Complaint does just that. (*See* Compl. at ¶¶ 40,43,44,48,49). Santanna's motion to dismiss Count I of the Complaint is therefore denied.

### Count II - Violation of Illinois Consumer Fraud Act by all Defendants

Plaintiffs allege Defendants engaged in unfair and deceptive acts and practices in violation of the ICFA when they made 12 false and misleading statements to potential and current customers concerning Santanna's natural gas services. (Compl. ¶ 66). Defendants contend Plaintiffs have neither stated a claim under the ICFA, nor pled their fraud allegations with particularity.

### Failure to State an ICFA Claim

The elements of an ICFA claim are (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Defendants contend Bell is not a consumer protected by the ICFA, and Plaintiffs have not alleged a deceptive act or injury. The Court finds Defendants' arguments unpersuasive.

The ICFA broadly defines a consumer as "any person who purchases merchandise not for resale in the ordinary course of his business." *Law Offices of William J. Stogsdill v. Cragin Fed. Bank for Sav.*, 645 N.E.2d 564, 566 (Ill. App. Ct. 1995) citing 815 ILCS 505/1(e). Further, the term "merchandise" includes services. *Stogsdill*, 645 N.E.2d at 566 citing 815 ILCS 505/1(b). Although Plaintiffs allege they obtained natural gas services from Santanna for their commercial locations, neither is engaged in the business of reselling natural gas. (*See* Compl. ¶¶ 3-4). Consequently, Plaintiffs fit within the broad definition of "consumers" protected by the ICFA. *See Petri*, 997 F. Supp. at 969.

Next Defendants characterize Plaintiffs' ICFA claim as nothing more than a breach of contract action arising because Santanna allegedly overcharged them for natural gas, and further submit they committed no deceptive acts. However, Plaintiffs' allegations cannot be so narrowly construed, as the gist of their ICFA claim is that Defendants engaged in a practice of "lur[ing] customers into signing [fixed rate] contracts by disseminating promotional [materials] containing misrepresentations of material

fact." *Petri*, 997 F. Supp. at 968. *See also* Compl. at ¶¶ 66a,c-i. If Defendants made false representations in order to induce natural gas users to contract with Santanna, such conduct could constitute a deceptive act or practice. *See e.g., Connick*, 675 N.E.2d at 594. Defendants mistakenly believe the Complaint must also explain how the representations are false or deceptive, but at the pleading stage, there is no such requirement. In fact, Plaintiffs are required only to identify the alleged misrepresentations, not prove the statements were in fact false or deceptive. *See Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (Rule 9(b) does not require plaintiffs to "plead facts showing that the representation is indeed false"). *See also DeLeon v. Beneficial Constr. Co.*, 998 F. Supp. 859, 867 (N.D. Ill. 1998). The Court therefore finds the Complaint pleads a deceptive act or practice by Defendants.

Finally, Defendants maintain Plaintiffs have not alleged damages resulting from the alleged deceptive acts. While it is true that a valid ICFA claim "must show that the consumer fraud proximately caused plaintiff's injury," *Connick*, 675 N.E.2d at 593, "the required allegation of proximate causation has been termed minimal, however, as that determination is best left to the trier of fact," *Oliveira v. Amoco Oil Co.*, 726 N.E.2d 51, 57 (Ill. App. Ct. 2000). Plaintiffs allege they suffered damages as a result of Defendants' unfair and deceptive practices. *See* Compl. ¶ 67. To prevail on the ICFA claim, Plaintiffs will need to demonstrate that the alleged misrepresentations caused their injury. *See Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1347 (Ill. App. Ct. 1982). But at this stage in the game, their general allegation of injury is more than sufficient.

### Failure to Plead Fraud with Particularity

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The heightened pleading standard imposed by Rule 9(b) applies to claims arising under the ICFA. *Petri*, 997 F. Supp. at 973; *Connick*, 675 N.E.2d at 593. Plaintiffs, then, must "identi[f]y ... the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) quoting *Bankers Trust Co.*, 959 F.2d at 683 (citations omitted). In other words, Plaintiffs

must plead "'the who, what, when, and where' of the alleged fraud." *Uni\*Quality, Inc.*, 974 F.2d at 923. Santanna contends the Complaint does not provide sufficient details regarding the circumstances underlying its alleged fraudulent communications, while the Individual defendants complain that the Complaint does not set forth the fraudulent conduct specifically engaged in by them, individuals.

The purpose of Rule 9(b) is "to ensure that the party accused of fraud . . . is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). As to Santanna, who concedes that the Complaint provides details as to at least 3 of its 12 alleged misrepresentations, notice has been given. Plaintiffs allege they received sales solicitations via facsimile from a specifically identified individual in Santanna's sales office, on a particular date. (Compl. at ¶¶ 37,45,). Attached to the Complaint as exhibits are the very documents Plaintiffs claim Santanna representatives sent to them. (Compl. Exs. I,K). The Court, therefore, is hard pressed to find Santanna has not received adequate notice as to the "who, what, when and where" of its alleged fraudulent conduct. *Cf. Bankers Trust Co.*, 959 F.2d at 683 (finding an allegation that on a particular date the parties entered into a contract that was a fraud because it was made without adequate consideration would satisfy Rule 9(b)).

The Individual defendants' objection warrants closer consideration, though, because the Complaint only generally alleges that they drafted and/or oversaw the false representations in Santanna's promotional materials. (Compl. ¶ 23). Specific details on the exact role each Individual defendant played in the alleged scheme are not provided. The Seventh Circuit has admonished plaintiffs alleging fraud against multiple defendants to take care in identifying who was responsible for which individual acts of fraud. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994); *Vicom, Inc. v. Harbridge Merchant Svcs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994). Nevertheless, it has also recognized that specificity requirements may be relaxed "when the details are within the defendant's exclusive knowledge." *Jepson*, 34 F.3d at 1328. This is a situation where the Court finds that exception applicable.

The extent of each Individual Defendant's involvement in the preparation, approval, and

-8-

dissemination of Santanna's promotional materials is not information Plaintiffs would be expected to know prior to filing a complaint, and gaining the opportunity to engage in discovery concerning Santanna's internal policies and procedures. *See, e.g., Petri*, 997 F. Supp. at 974. Furthermore, Plaintiffs' allegations that the two highest-ranking corporate officers of an "energy marketing company" were responsible for planning and directing the company's marketing strategy is not so vague of a claim that the Individual defendants cannot adequately respond. *Cf. Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 348 (N.D. Ill. 1997) (finding a complaint that did not identify precisely which individuals made various misrepresentations was sufficiently specific because the role of each corporate defendant in the scheme was reasonably clear). The Court therefore will not interpret Rule 9(b) in a manner that would penalize Plaintiffs for lacking details, through no fault of their own, about the particular duties of the Individual defendants. *See Petri*, 997 F. Supp. at 975. Accordingly, Defendants' motions to dismiss Count II are denied.

### Count IV – Breach of Fiduciary Duty by Santanna

Plaintiffs allege Santanna breached its fiduciary duty as established by their Agreements, when it engaged in the same conduct that formed the basis of Plaintiffs' ICFA claim. Plaintiffs, therefore, must show (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) an injury resulting from the breach. *Petri*, 997 F. Supp. at 977. Santanna contends Plaintiffs cannot sustain this claim because the Agreements created a limited agency relationship, and Plaintiffs have alleged nothing constituting a breach of that duty.

The Agreement provides as follows:

> Agency Agreement: Buyer authorizes Seller to act as exclusive agent for all matters relating to services under Buyer's utility transportation program, including the purchase and delivery of gas to facilities described below. This authorization includes, but is not limited to the right to obtain billing and payment histories, receive future statements regarding Buyer invoices from the utility, and to execute, amend, or cancel agreements between the utility and Buyer.

(Compl. Exs. A,B). Notwithstanding the fact that the Agreement purports to grant Santanna widespread authority in managing and overseeing "all matters" relating to Plaintiffs' participation in the transportation gas program, Santanna maintains its duties were limited to communications with

Plaintiffs' LDCs only. The Court is not convinced the Agreement supports such a narrow construction of Santanna's fiduciary responsibilities. However, the exact scope of the fiduciary relationship is not an issue the Court must decide now, because assuming Santanna is correct, Plaintiffs have alleged conduct meeting that criteria, namely that Santanna falsely informed Bell's LDC that Bell had voluntarily terminated its contract with Santanna. (Compl. ¶ 76j). Thus, the Court will focus on whether that particular communication could constitute a breach of the fiduciary duty as defined by Santanna.[7]

"A fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith--in fact to treat the principal as well as the agent would treat himself." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992). Plaintiffs contend that Santanna, in retaliation for Bell's complaints about Santanna's refusal to honor the contract rate, deliberately misrepresented to the LDC that Bell had cancelled its contract with Santanna. Certainly, it would not be in good faith for Santanna, as the "exclusive agent" for Bell vis-a-vis all aspects of Bell's participation in the transportation gas program, to engage in such conduct. *Cf. Martin*, 643 N.E.2d at 741 (fiduciary duty includes fair dealing by an agent); *Burdett*, 957 F.2d at 1381 (fiduciary required to disclose all material facts). The Court therefore finds it conceivable that Plaintiffs have alleged, albeit just barely, that Santanna breached its fiduciary duty.

### Count V - RICO Violations by Individual Defendants

Finally Plaintiffs allege that the same 12 actions that formed the basis of its ICFA and breach of fiduciary duty claims, also demonstrate that the Individual Defendants engaged in a scheme to defraud natural gas customers using the mails and wire in violation of RICO. To sustain this claim, Plaintiffs must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Lachmund*, 191 F.3d at 783. The Individual defendants challenge all but the enterprise prong of the

---

[7]The Court's inquiry on the breach of fiduciary claim is necessarily limited by Plaintiffs' allegations. Plaintiffs rely primarily upon Santanna's precontractual statements to support their claim. (*See* Compl. at ¶ 76a,c-i,l). However, absent some allegation that the creation of the agency relationship involved the "peculiar trust and confidence" found in *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 741 (Ill. 1994), those actions cannot constitute a breach of the fiduciary duty imposed by the Agreement. *See e.g., Petri*, 997 F. Supp. at 981.

-10-

test. For the most part, the Court agrees with the Individual defendants that Plaintiffs' RICO allegations, as pleaded, are insufficient.[8]

The underlying goal of RICO is to address long-term conduct, rather than sporadic fraudulent acts. *See Vicom*, 20 F.3d at 779. Thus it is crucial that Plaintiffs establish a "pattern of racketeering activity" by the Individual defendants. *See Brandon Apparel Group, Inc. v. Quitman Mfg. Co., Inc.*, 52 F. Supp. 2d 913, 917 (N.D. Ill. 1999). Plaintiffs' theory of the case is that the Individual defendants, who directed the activities of Santanna, lured customers to Santanna by falsely promising to supply natural gas at a lower, fixed rate for the entire term of their agreement, when they knew that they would not honor the contract rate if natural gas prices rose. Plaintiffs identify the alleged racketeering activity as mail and wire fraud. The Individual defendants counter with detailed reasons as to why their alleged representations were not fraudulent, but that argument completely misses the point. *See Jepson*, 34 F.3d at 1330 ("a given mailing or wire communication need not be fraudulent on its face to constitute an act of mail or wire fraud; even innocuous communications can qualify for this purpose so long as they are incident to an essential part of the scheme").

Misrepresentation of an intent to honor promises, which is what Plaintiffs allege here, can form the basis for a RICO violation. *See Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999) ("[s]ometimes the evidence shows outright lies and a plan not to keep one's promises–enough of them to meet RICO's continuity-plus-relationship formula for a 'pattern'"); *Corley v. Rosewood Care Ctr. Inc. of Peoria*, 142 F.3d 1041, 1050 (7th Cir. 1998) ("bait and switch" scheme stated a RICO violation); *see also Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1110 (N.D. Ill. 2001) ("false pretenses and promises as well as misrepresentations of present fact are within the scope of RICO liability for mail or wire fraud). The Individual defendants respond that Plaintiffs' theory applies only if there has been a slight lapse in time between the promise and the refusal to perform, a criteria Bell, as a Santanna customer for over a year before the unilateral rate increase, cannot meet. However, the Individual defendants ignore the fact that Bell signed an Addendum reaffirming the rate in the original

---

[8]The Court rejects the Individual defendants' Rule 9(b) challenge to the RICO conduct underlying the alleged scheme to defraud, for the same reasons noted in its resolution of their ICFA claims, *supra*, at pp.8-9.

Agreement only two short months prior to the imposition of the higher rate. Plaintiffs' RICO theory, therefore, is not as implausible as the Individual defendants suggest.

Nevertheless, Plaintiffs have not demonstrated the requisite "pattern" of racketeering activity. To do this, Plaintiffs must point to at least two predicate acts, and show that these acts are not only related but that they also amount to or pose a threat of continued criminal activity. *Vicom*, 20 F.3d at 779 citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989); *see also Brandon Apparel Group, Inc.*, 52 F. Supp. 2d 913 at 918 (explaining that RICO plaintiffs must satisfy the "continuity plus relationship" test). The Complaint arguably identifies several predicate acts in sufficient detail to satisfy Rule 9(b), i.e., the sales solicitations containing the alleged misrepresentations, the Agreements and Addendum, the letters stating Santanna would no longer supply gas at the contract rate, and various telephone conversations regarding Plaintiffs' complaints about the rate increase, Santanna's termination of Bell's Agreement and subsequent offer of reinstatement on different terms. What the Complaint conspicuously lacks, however, is any information concerning the invoices charging the higher rate.

An integral part of the alleged scheme is that the Individual defendants imposed significantly higher rates upon customers to whom they had promised a much lower, fixed rate. Plaintiffs allege they received such bills, but never state how much they were charged, or on what dates. Surely Plaintiffs possess copies of those invoices and therefore could have included those pertinent details in the Complaint. Without that information, a critical component of the scheme has not been pled. *See Jepson*, 34 F.3d at 1328; *Midwest Grinding Co. Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).

Additionally, Plaintiffs' have not alleged enough details to satisfy the "continuity" prong of the test. Continuity "is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Vicom*, 20 F.3d at 779 quoting *H.J. Inc.*, 492 U.S. at 241. The Complaint currently alleges one elaborate scheme to defraud commercial natural gas users, but identifies with particularity only two victims, the Plaintiffs. Although Plaintiffs generally allege that numerous other consumers were defrauded by Santanna as well, they fail to back up that claim with a single specific fact. In

-12-

*Corley*, the Seventh Circuit found the plaintiff's general allegation that the defendants defrauded additional unidentified residents sufficient only because the plaintiff had also set forth in detail how other *identified* residents had been victimized by the identical scheme. *Corley*, 142 F.3d at 1051. *See also Chen*, 159 F. Supp. 2d at 1111. Plaintiffs here, in contrast, have not set forth the circumstances of the alleged fraud upon any Santanna customers other than themselves.

Furthermore, the Court will not allow Plaintiffs to expand the number of potential victims of this alleged scheme (as well as the scheme's duration) by including the class members in *Petri v. Gatlin*. Although *Petri*, on its face, alleged a similar scheme by the same Individual defendants to defraud Santanna customers by overcharging them for natural gas, the underlying predicate acts were completely different. *See Petri*, 997 F. Supp. at 982. Two alleged schemes involving unrelated predicate acts cannot be combined to demonstrate a pattern of racketeering activity. *See e.g., Vicom*, 20 F.3d at 779 ("[t]he relationship part of this 'continuity plus relationship' test requires that the predicate acts be 'committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct'") (citation omitted).

Plaintiffs have arguably outlined the contours of a fraudulent scheme by the Individual defendants to impose higher prices upon its customers. But some critical details, which the Court has identified above, are missing. Consequently, the RICO claim, as currently alleged, cannot stand. Nevertheless, the Court will allow Plaintiffs an opportunity to cure the deficiencies.

## CONCLUSION

The motions to dismiss Counts I, II and IV are **DENIED**. However, Count V is **DISMISSED** without prejudice. Plaintiffs shall have until January 4, 2002, to tender a proposed amended complaint reformulating Count V, along with a motion for leave to file.

**IT IS SO ORDERED.**

_____
WILLIAM J. HIBBLER, DISTRICT JUDGE

DATED: December 7, 2001

-13-